MR. JUSTICE SHEEHY,
dissenting:
This decision continues what has become a commonplace in the history of the state of Montana: the State gets the gold mine, Butte gets the shaft.
The decision is about as farfetched a stretch of interpretation of a constitutional provision as can be imagined. The State Constitution requires that lands disturbed by the taking of natural resources shall be reclaimed. The Constitution further provides for a special fund to be created based solely on the extraction of natural resources. Somehow, semantically, the majority find no nexus between the two provisions, all contained in the same constitutional article.
The close tailoring of the tax on the extraction of natural resources to the constitutional mandate that all lands disturbed by the taking of natural resources be reclaimed is ignored. Somehow the obvious connection between the tax and the purpose of the tax escapes the facile interpretation of the majority.
In their response to the petition, the state of Montana and its Treasurer admitted that the 1985 legislature “utilized a portion of the interest income from the Resource Indemnity Trust fund to fund general operating expenses of state agencies.” (Paragraph 11, response to amended petition.) Yet the majority see nothing inconsistent in permitting the State to fund its general operating expenses from a fund constitutionally entitled “Resource Indemnity Trust.” A trust by any other name remains a trust, and a breach of *408 trust by the State should no more be countenanced by this Court than by any private trustee.
The Resource Indemnity Trust was never intended to fund the general operations of the State. Other taxes levied upon extractors of natural resources amply provide for the general expenses of state government. The coal severance tax (Section 15-35-103, MCA) is partly credited to the general fund of the State. (Section 15-35-108(3)(k), MCA.) The oil and gas severance tax (Section 15-36-101, MCA) is allocated to county expenses and then to the general fund. Section 15-36-112, MCA. The mining license taxes levied on metalliferous mines (Section 15-37-103, MCA) goes partly to the credit of the general fund of the State. Section 15-37-117, MCA. The taxes on micaceous mineral mines all go to the general fund of the State. Section 15-37-207, MCA. The Resource Indemnity Trust Tax, as a special tax levied for land reclamation, cannot be justified if some of that tax is going to be siphoned off for the general operations of the State. To permit such extraneous use of the tax funds violates the legislative purpose given as the excuse for levying the tax. That legislative purpose follows:
“It is the policy of the state of Montana to indemnify its citizens for the loss of long term value resulting from the depletion of its mineral resource base and for environmental damage caused by mineral development. This policy of indemnification is achieved by establishing a permanent Resource Indemnity Trust Fund from the proceeds of a tax levied on mineral extraction and by allocating spendable trust revenues:
“(1) To protect and restore the environment from damages resulting from mineral development; and
“(2) To support a variety of development programs that benefit the economy of the State and the lives of Montana citizens.”
How blatant will the extraneous use of Resource Indemnity Trust taxes become? To begin with, 30 percent of the interest income of the Resource Indemnity Trust Fund must now be allocated to the water development state special revenue account. Section 15-38-202(2)(a), MCA. Out of that account, the taxes imposed on the extraction of natural resources will be used for the rehabilitation of State owned projects and parks, including the rehabilitation of spillways and State owned dams; the formulation of down stream emergency warning and evacuation plans for state-owned dams, the development of hydropower potential of state-owned dams; the promotion and development of off-stream or tributaries storage; and *409 among others, administrative expenses, including but not limited to the salaries and expenses of personnel, equipment, office space and other necessities incurred in the administration of the water development program. Section 85-l-604(3)(b), MCA.
The preservation and proper use of water is necessary to the well-being of this dry western state, but the expense of such preservation should never be fobbed off on a tax levied solely on mines and oil and gas operations, a tax ostensibly levied for the purpose of land reclamation.
I take the position that since land reclamation is constitutionally demanded, and since the Constitution provides a method through the Resource Indemnity Trust Fund to pay for such reclamation, that monies raised from taxes on parties who extract the natural resources should be limited to the purposes of the tax. The legislature, by resorting to special tax funds to provide for general fund obligations is creating an unequal and unfair burden on these special taxpayers and we should not countenance it.
MR. JUSTICE HUNT concurs in the foregoing dissent of MR. JUSTICE SHEEHY.